Filed 7/11/24  P. v. Lanz CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062197 |
| v. | (Super. Ct. No. C90755) |
| ERIC JOSEPH LANZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Cheri T. Pham, Judge.  Affirmed.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Lynne G. McGinnis and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

In 1992, a jury found Eric Joseph Lanz guilty of second degree murder and possession of a firearm by a felon.  The jury also found he personally used a firearm during the murder.  In 2022, he petitioned for resentencing under Penal Code former section 1170.95 (now § 1172.6).[1]  The trial court found Lanz was statutorily ineligible for such relief and summarily denied the petition.  On appeal, Lanz argues the court should have issued an order to show cause because it was possible, based on the jury instructions, that the jury found him guilty of murder by imputing malice to him based solely on his participation in a crime.  We disagree and affirm the postjudgment order.

## FACTS

A 1992 information charged Lanz and Kenneth Lewis Webb with the murder of Bruce Gordon (count 1); Lanz with two counts of possession of a firearm by a felon (count 2 [a .357 handgun], count 3 [a .32 caliber handgun]); and Webb with one count of possession of a firearm by a felon (count 4) – all allegedly occurring on the same day.  On count 1, it was alleged Lanz "personally used a firearm" during the offense and Webb "was vicariously armed with a firearm . . . and knew that another principal [was] personally armed."

Lanz and Webb were tried together.  Shortly before jury selection, the trial court granted the People's motion to dismiss counts 3 and 4.  At the close of the prosecution's case, the court granted Webb's motion for acquittal under section 1118.1, but denied Lanz's section 1118.1 motion,

---

[1]     Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6 without substantive change.  (Stats. 2022, ch. 58, § 10.)  For clarity, we refer to the statute as section 1172.6 throughout the opinion.  All further statutory references are to the Penal Code.

"find[ing] . . . sufficient evidence as to Lanz to go to the jury on [first] or [second] degree." Lanz's defense counsel then rested, "rel[ying] on the state of the evidence as presented."

The jury found Lanz guilty on both remaining counts. On count 1, the jury found him guilty of second degree murder and found he personally used a firearm. Lanz was sentenced to 15 years to life with the possibility of parole on count 1 and a consecutive term of 16 months on count 2. In an unpublished opinion, this court affirmed the judgment. (*People v. Lanz* (Jan. 28, 1994, G012770) [nonpub. opn.] (*Lanz I*).)

In April 2022, Lanz filed a petition for resentencing under section 1172.6. The trial court denied it because he failed to make a prima face case for relief as a matter of law. In so ruling, the court relied on the following as the record of conviction: the 1992 information; minute orders issued between the filing of the information and the verdict; the jury instructions, both given and withdrawn; the signed verdict forms; and *Lanz I* (considered only for the procedural case history). The court found Lanz was not convicted of murder under any theory in which malice could have been imputed to him solely on his participation in a crime, mainly because the jury was not instructed on any theory of vicarious liability. The court further noted the jury found Lanz personally used a firearm during the murder. While acknowledging the finding "does not by itself 'preclude relief' for [Lanz] under [s]ection 1172.6," the court reasoned it supported the conclusion Lanz was the actual killer. Lanz timely appealed from the postjudgment order.

## DISCUSSION

Lanz argues the jury instructions, as given, made it possible for the jury to convict him of murder under a now-invalid theory of second degree felony murder. Not so.

3

# I.

*The Section 1172.6 Framework and Standard of Review*

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It did so by amending sections 188 and 189 and adding section 1172.6. (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).)

Section 188, as amended, prohibits malice from being "imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Section 189, as amended, limits liability for felony murder to a person who: (1) was the actual killer; (2) "with the intent to kill, aided, abetted . . . or assisted the actual killer in the commission of murder in the first degree"; or (3) was a major participant in the underlying felony who acted with reckless indifference to human life. (§ 189, subd. (e).) And section 1172.6 permits a person convicted of murder to petition for resentencing if he or she could not be convicted under the new law. (Sen. Bill 1437; Sen. Bill 775 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2) (Senate Bill 775).)

Upon receipt of a facially valid petition, the trial court reviews the petition to determine if the petitioner has made a prima facie case for relief. (§ 1172.6, subd. (c).) This prima facie inquiry is "limited," and the bar is "'set very low'" for the petitioner. (*People v. Lewis* (2021) 11 Cal.5th 952, 971, 972 (*Lewis*).) But the bar still exists, and the court may look to the record of conviction to decide if it has been cleared. (*Strong, supra,* 13

4

Cal.5th at p. 708, 715.) The record of conviction "allow[s] the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, at p. 971.) And if it shows a petitioner is ineligible for section 1172.6 relief as a matter of law, the court may summarily deny the petition, without issuing an order to show cause. (*Strong*, at p. 708.) A petitioner is ineligible as a matter of law if the record of conviction conclusively establishes the petitioner was convicted of murder on a theory of liability unaffected by Senate Bills 1437 and 775. (*People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 931.)

We review de novo whether a petitioner has made a prima facie case for relief. (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101.)

II.

*Application of the Law to Lanz's Case*

Because Lanz's challenge hinges on the proper interpretation of the jury instructions, we begin by discussing the relevant instructions.

At Lanz's trial, the court instructed the jury on count 1 on theories of first degree murder (CALJIC No. 8.20), first degree felony murder (robbery) (CALJIC No. 8.21), and lesser included offenses of second degree murder (CALJIC Nos. 8.30–8.31), voluntary manslaughter (CALJIC No. 8.40), and involuntary manslaughter (CALJIC No. 8.45).[2]

On count 1, the jury found Lanz not guilty of first degree felony murder but guilty of second degree murder, and it found he personally used a firearm during the offense. From a review of the relevant jury instructions, we can conclude as a matter of law that the jury found Lanz committed

---

[2] We refer to the versions of the CALJIC jury instructions in effect at the April 1992 trial.

5

murder.

The jury was instructed that Lanz was accused of committing murder and that "[e]very person who unlawfully kills a [human being] [with malice aforethought] [or] [during the commission or attempted commission of robbery [a felony inherently dangerous to human life] is guilty of the crime of murder . . . ." (CALJIC No. 8.10.) Thus, for the jury to find Lanz guilty of murder, the People had to prove: (1) "A human being was killed"; (2) "The killing was unlawful"; and (3) "The killing [was done with malice aforethought] [or] [occurred during the commission or attempted commission of robbery]," which "is a felony inherently dangerous to human life." (CALJIC No. 8.10.)

The jury was instructed that if it found Lanz guilty of murder, it had to find whether it was "of the first or second degree." (CALJIC No. 8.70.) It was instructed on two theories of first degree murder: (1) a "willful, deliberate and premeditated killing with express malice aforethought" (CALJIC No. 820); and (2) felony murder, an unlawful killing "which occur[red] [during the commission or attempted commission of the crime of robbery . . . when the perpetrator had the specific intent to commit such crime.]" (CALJIC No. 8.21). It was also instructed on two theories of second degree murder: (1) an unlawful killing committed with express malice but without deliberation and premeditation (CALJIC Nos. 8.11, 8.30); and (2) an unlawful killing committed with implied malice, that is, when: "l. The killing resulted from an intentional act, [¶] 2. The natural consequences of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life." (CALJIC Nos. 8.11, 8.31). The jury was told that if there was "reasonable doubt whether such murder was of the first or of the second

6

degree," it had to "give defendant the benefit of that doubt and return a verdict fixing the murder as of the second degree." (CALJIC No. 8.71.)

The jury was further instructed that if it found Lanz guilty on count 1, it must decide if he "personally used a firearm" – meaning "to display a firearm in a menacing manner, intentionally to fire it, or intentionally to strike or hit a human being with it" – during the offense. (CALJIC No. 17.19.)

Finally, the jury was instructed that Webb's guilt or innocence was "no longer before [it]"; "not [to] consider this fact for any purpose"; and "not [to] infer or speculate therefrom as to [Lanz's] guilt or innocence" on any remaining counts. And given Webb's acquittal, the jury *wasn't* instructed on first degree felony murder in pursuance of a conspiracy first degree felony murder as an aider and abettor, or aiding and abetting under the natural and probable consequences doctrine, as originally requested by the People.

Here, by returning a guilty verdict on second degree murder, the jury necessarily found beyond a reasonable doubt that Lanz unlawfully killed someone and did so with malice aforethought, express or implied. (CALJIC Nos. 8.10, 8.11, 8.30.) By acquitting Lanz of first degree murder, the jury necessarily found the People had failed to prove beyond a reasonable doubt that the killing was with deliberation and premeditation, occurred during a robbery, or occurred during an attempted robbery. (CALJIC Nos. 820–8.21.) And by finding the personal firearm use allegation to be true, the jury necessarily found that Lanz menacingly displayed a firearm, fired it, hit someone with it, or committed any combination of these acts during the murder.

Given these jury findings, we agree with the trial court that Lanz has not made a prima facie showing for section 1172.6 relief. The jury did not

convict Lanz on any theory of liability allowing malice to be imputed to him based solely on his participation in the offense.

Lanz disagrees, relying heavily on the jury instructions on first degree felony murder and robbery. For first degree felony murder, an "unlawful killing" can be "unintentional or accidental" so long as it occurs during a robbery or attempted robbery. (CALJIC No. 8.21.) To find a robbery was committed, the jury had to find, among other things, "[t]he taking [of property] was accomplished either by force, violence, fear or intimidation," and the "property was taken with the specific intent permanently to deprive such person of the property." (CALJIC No. 9.40.)

Lanz argues a juror could have reasonably understood the jury instructions to mean: (1) "a killing that occurred during the course of a robbery, in which the individual intended to steal, but did not intend to use force/fear, was some sort of second-degree felony murder/murder under the natural and probable consequences doctrine"; (2) "a death that resulted at any time while accomplishing a theft could be second degree murder"; (3) felony murder can be based on an unintentional or accidental use of force or fear, without a finding of malice; and (4) Lanz could be convicted of second degree murder "based on a finding he was a participant in any other act, '[t]he natural consequences' of which were 'dangerous to human life," but without a finding Lanz was the perpetrator of that act. We reject these arguments entirely.

Lanz's arguments are premised on either a misreading of the given instructions or on instructions never given to the jury. First, all arguments involving the robbery instruction are specious because the jury found he was not guilty of first degree murder. It thus necessarily found the killing did not occur during a robbery or attempted robbery. Second, in any

8

event, "the intent element of robbery does not include an intent to apply force against the victim or to cause the victim to feel fear." (*People v. Anderson* (2011) 51 Cal.4th 989, 991.) Third, the jury did not receive instructions on second degree felony murder,[3] murder under the natural and probable consequences doctrine, or theft, so they could not have misapplied them. (See *People v. McKinnon* (2011) 52 Cal.4th 610, 670 [reviewing court presumes jury followed instructions].) Fourth, the jury was instructed Lanz could be found guilty of second degree murder if he "unlawfully kill[ed]" a person and acted "with malice aforethought." (CALJIC Nos. 8.10–8.11.) Lanz points to no instruction that allows the malice of another to be imputed onto him.

Rather, the jury was instructed that Lanz was accused of committing murder and that "[e]very person who unlawfully kills a [human being] [with malice aforethought] [or] [during the commission or attempted commission of robbery [a felony inherently dangerous to human life] is guilty of the crime of murder . . . ." (CALJIC No. 8.10.)

For these reasons, we conclude the court properly denied Lanz's section 1172.6 petition at the prima facie stage.

## DISPOSITION

The postjudgment order is affirmed.

---

[3]  Indeed, there is no such crime as second degree felony murder based on robbery. (§ 189, subd. (a) [murder by robbery "is murder of the first degree"], subd. (b) [all other nonenumerated "murders are of the second degree"].)

DELANEY, J.

WE CONCUR:


MOORE, ACTING P. J.


GOETHALS, J.